NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0455n.06
No. 15-1758

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Aug 10, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RYAN VAN STEVENSON, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    MERRITT, BATCHELDER, and GILMAN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**   Ryan Van Stevenson appeals his conviction of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b).  An investigation conducted by the FBI in 2014 uncovered that Stevenson possessed and solicited pornographic images of minors, including a 16-year-old girl, E.K.  The government offered Stevenson two separate plea agreements, and, accepting the first offer, he pleaded guilty to one count of coercion and enticement of a minor.  After the release of the Probation Office's Presentence Report (PSR), Stevenson moved to withdraw his guilty plea.  The United States District Court for the Western District of Michigan denied his motion and sentenced him to 360 months of imprisonment.  Stevenson argues on appeal that the district court abused its discretion by refusing to grant his motion to withdraw his guilty plea, and by sentencing him unreasonably.  We AFFIRM.

## I.

In February 2012, 29-year-old Ryan Van Stevenson met 15-year-old E.K. in an online chatroom dedicated to bondage and discipline, sadism and masochism (BDSM).[1] They developed a master-slave relationship, communicating and sending sexually explicit photographs through email, text messages, and telephone. In May 2012, when E.K. was 16 years old, Stevenson sent E.K. a self-authored document titled "Slave Assignment" ordering her to send him sexually explicit photos and videos.[2] E.K. complied.

This relationship continued for two years until E.K., then 18 years old, graduated from high school, left her parents and home in Portland, Oregon, and moved to Michigan to live with Stevenson, his wife, and his two daughters. E.K.'s parents flew to Michigan and brought their daughter back to Oregon with them, but soon thereafter, E.K. boarded another flight and flew back to Michigan. E.K.'s parents hired private investigators, who gave the information they collected to federal law enforcement officials, who obtained search warrants for various locations, including Stevenson's house. When FBI agents executed the search warrant, they found CDs, a briefcase, photographs, rolls of film, and other electronic devices, many of which contained pornographic images of E.K. when she was a minor and other pornographic images of children.

---

[1] E.K. told Stevenson that she was 19 years old in the chatroom, but that same week she told him in an email that she was younger. Stevenson acknowledged that the victim's true age was 15 when he began communicating with her but he claims that he did not know this until discovery. He admits that after E.K.'s 16th birthday in April 2012 he knew her true age, and, "[f]or the next two years, [Stevenson] and EK exchanged sexually explicit photos and e-mail messages as part of an online master-slave relationship."

[2] We find nothing in the record that supports the concurrence's claim that the the perpetrator was mentally ill.

**II.**

Stevenson was arrested and an indictment was filed in the United States District Court for the Western District of Michigan, charging him with (1) coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b)[3]; (2) receipt of child pornography, in violation of 18 U.S.C. §§ 2256(8)(A), 2552A(a)(2)(A) and (b)(1); and (3) possession of child pornography, in violation of 18 U.S.C. §§ 2256(8)(A), 2552A(a)(5)(B) and (b)(2). The factual basis for the charge of coercion and enticement of a minor was that Stevenson had used the internet to communicate with a girl under the age of 18 and to persuade her to send him images of herself engaged in sexually explicit conduct.

On September 29, 2014, the government offered Stevenson a plea agreement in which he would plead guilty to coercion and enticement of a minor, an offense punishable by a term of 10 years' to life imprisonment. On December 10, 2014, the government offered Stevenson an alternative plea agreement in which he would plead guilty to the charge of sexual exploitation of a child, an offense punishable by a term of 15 to 30 years' imprisonment. Stevenson signed the second plea agreement—with the 30-year maximum—on December 16, and the court scheduled a change-of-plea hearing for December 19. On the morning of the hearing, however, Stevenson changed his mind, signed the first plea agreement, and pleaded guilty to coercion and enticement of a minor—with the life-term maximum—which the court accepted. Both plea agreements contained identical waivers of rights to appeal, including a waiver of Stevenson's right to appeal his sentence.

---

[3] The government may charge in the conjunctive and prove in the disjunctive. *See United States v. Pirosko*, 787 F.3d 358, 368 (6th Cir.), *cert. denied*, 136 S. Ct. 518 (2015) (holding that "[i]t is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. Upon the trial the government may prove and the trial judge may instruct in the disjunctive form used in the statute." (quoting *United States v. Murph*, 707 F.2d 895, 896-97 (6th Cir. 1983) (citation omitted))).

Stevenson's initial PSR was released on March 9, 2015. The PSR calculated Stevenson's Guidelines range as life imprisonment based on a total offense level of 43 and a criminal-history category of II. Four days later, Stevenson told his counsel that he wanted to withdraw his guilty plea. Stevenson subsequently filed a motion to withdraw his guilty plea on March 26, 2015. On April 2, 2015, the district court denied Stevenson's motion.

Following the production of a revised PSR, the district court held a sentencing hearing in June 2015. Stevenson raised only two objections at sentencing. First, he challenged the application of a four-level enhancement for images reflecting sadistic or masochistic conduct. The court sustained the objection. Second, Stevenson challenged the application of a two-level enhancement for the use of a computer in furtherance of the offense. The court overruled that objection.

After ruling on these objections, the district court calculated a total offense level of 40 and a criminal-history category of II, which yielded a Guidelines range of 324 to 405 months' imprisonment. The district court then sentenced Stevenson to 360 months' imprisonment, which was well within the Guidelines range. After the court imposed sentence, Stevenson did not raise any further objections.

### III.

We review for abuse of discretion the district court's ruling on a motion to withdraw a plea of guilty. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). A district court abuses its discretion when "it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* (quoting *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998)).

We review sentences for both procedural and substantive reasonableness under the abuse-of-discretion standard. *United States v. Jones*, 641 F.3d 706, 711 (6th Cir. 2011). Sentences are procedurally unreasonable if the district court does not calculate the Guidelines range or calculates it improperly, treats the Guidelines as mandatory, fails to consider the factors in 18 U.S.C. § 3553(a), selects a sentence based on clearly erroneous facts, or gives an inadequate explanation for the sentence. *Id.* When, as here, a defendant fails to "object to the sentence upon inquiry from the district court," we review a claim of procedural unreasonableness for plain error. *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011).

## A.

"The withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court." *United States v. Head*, 927 F.2d 1361, 1375 (6th Cir. 1991) (quoting *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987)). "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d).

We consider various factors to determine whether a defendant has shown a fair and just reason for requesting withdrawal, including:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the

> defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). "This rule is designed 'to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *Id*. at 280-81 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).

Turning to the first factor, Stevenson pleaded guilty on December 19, 2014, but he did not file his motion to withdraw his plea until three months later, on March 26, 2015. This circuit has previously concluded that delays far shorter than Stevenson's weigh in favor of affirming a district court's denial of a motion to withdraw. *See, e.g.*, *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (stating that the strongest factor supporting the district court's denial of the defendant's motion to withdraw was a 67-day delay and the defendant's failure to justify it); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (recognizing 55-day delay as lengthy and supported denial of motion to withdraw). Stevenson's 97-day delay—more than three months—weighs in favor of affirming the district court's denial of his motion to withdraw.

Stevenson attempts to provide a valid reason for the delay, contending that he repeatedly tried to contact his counsel prior to March 2015 to alert counsel that he regretted pleading guilty. The record does not support his claim. Moreover, even if Stevenson did contact his counsel or try to file a motion to withdraw the plea on or about February 4, as he claims, the delay would still have been greater than six weeks, and this circuit has counted delays of less than six weeks against the defendant when evaluating the propriety of granting a motion to withdraw. *See Spencer*, 836 F.2d at 239 (holding that the district court did not abuse its discretion where there

was a five-week delay). The timing of Stevenson's motion also undermines his claim: four days after the release of his PSR, which calculated his Guidelines imprisonment term as life imprisonment, he told his counsel that he wanted to withdraw his plea. Both the delay in Stevenson's filing his motion to withdraw and his failure to provide a valid reason for the delay weigh in favor of affirming the district court's denial of his motion.

Stevenson also argues that he is innocent of the crime of coercion and enticement of a minor "because he did not coerce EK into any activity." However, to be guilty of a violation of 18 U.S.C. § 2422(b), a defendant must have "knowingly persuade[d], induce[d], entice[d], *or* coerce[d] any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, *or attempt[ed]* to do so." (emphasis added). Stevenson does not dispute that the production of child pornography, that is, the sexually explicit photographs that he persuaded E.K. to send to him, is such activity. 18 U.S.C. § 2427. Rather, he simply claims that nothing that he did with regard to E.K. constituted coercion. But this circuit has made it plain that § 2422(b) requires only that "the defendant had an intent to persuade or to attempt to persuade" a minor to engage in prohibited sexual activity. *United States v. Bailey*, 228 F.3d 637, 638 (6th Cir. 2000). Stevenson's plea agreement uses the disjunctive language of § 2422(b), and it makes clear that he at least persuaded or attempted to persuade E.K. to engage in the prohibited activities. And Stevenson specifically acknowledged at the change-of-plea hearing that he had carried on a lengthy cyber relationship with E.K. that included his demanding, and her sending, quantities of sexually explicit pictures.

The circumstances underlying Stevenson's entry of his guilty plea do not suggest that he misunderstood what he was doing. He argues that he was confused about the plea because

(1) each of the two plea agreements "describe[d] complicated charges," (2) he did not have enough time to consider the second plea agreement, and (3) he switched between the two plea agreements just before the change-of-plea hearing. However, during the plea colloquy, Stevenson confirmed that he understood the terms of the agreement and was freely and voluntarily pleading guilty to Count One of the indictment. He confirmed that he had had an adequate opportunity to discuss the plea agreement with his counsel and that he was satisfied with his counsel. He also stated that he did not have any questions regarding the plea agreement or the charge. He repeated his desire to plead guilty to the charge after the government read Count One into the record and he stated that he understood that the minimum sentence was 10 years' imprisonment and that the maximum sentence was life imprisonment. Stevenson also had sufficient time to consider his plea agreement. He received the first plea agreement, which he ultimately accepted, on September 29. On December 10 he received the second plea agreement, which included a lower maximum sentence of 30 years' imprisonment, but a higher, 15-year, minimum sentence. Although Stevenson initially signed the second agreement, he ultimately decided to plead guilty under the terms of the first agreement, which he had had more than two months to consider.

Stevenson does not argue that his nature and background suggest a fair and just reason to request withdrawal. He does argue, however, that his lack of experience with the federal justice system weighs in his favor because his last criminal conviction prior to the instant offense occurred in 2001, and the present case was his first contact with the *federal* criminal justice system. Although both of these statements are true, they do not suggest that he is unfamiliar with guilty pleas. In fact, he has pleaded guilty to criminal charges on four separate occasions in three different states.

Because the balance of the first six factors weighs in favor of affirming the district court's denial of Stevenson's motion to withdraw his guilty plea we need not evaluate any prejudice to the government. *See United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987) (stating that "the government is not required to establish prejudice that would result from a plea withdrawal[] unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal"). The district court accordingly acted within its discretion when it denied Stevenson's motion to withdraw.

**B.**

Stevenson next argues that his sentence was procedurally and substantively unreasonable because the district court did not consider certain 18 U.S.C. § 3553(a) factors and because it based his sentence on a disdain for BDSM relationships. These claims cannot get out of the gate, however, because of the appeal waiver in Stevenson's plea agreement.

"A defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)). Stevenson waived "the right to appeal the sentence as determined by the Court at sentencing" and the right to appeal "the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742." He retained the "right to appeal a sentence that exceeds the statutory maximum of the count of conviction or is based upon an unconstitutional factor" and the right to appeal "those objections preserved at sentencing that the Court incorrectly determined the final Guideline range."

Stevenson's waiver was knowing and voluntary and neither of his briefs argues that the appeal waiver is invalid. He denied having any questions about his plea agreement, confirmed

that he had an adequate opportunity to thoroughly discuss this matter with his attorney, and confirmed that he understood that he would be giving up certain rights legally to collaterally attack a sentence that the court would be required to impose. He has waived the challenges to his sentence that he raises on appeal and his claims do not fall under any of his retained rights to appeal. Because waivers of rights to appeal in a plea agreement are enforceable, we deem this claim waived. *See Fleming*, 239 F.3d at 763-64; *see also United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012) (holding that "[c]riminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily. When they do so, [o]nly challenges to the validity of the waiver itself will be entertained on appeal." (internal quotation marks and citations omitted, alteration in original)).

## IV.

For the aforementioned reasons we AFFIRM the judgment of the district court.

**MERRITT, Circuit Judge, concurring.** The defendant here pled guilty to using the "internet to communicate with a girl approximately 15 to 17 years old and persuaded . . . her into sending images of herself engaged in sexually explicit conduct and the lascivious display of her pubic area" in violation of 18 U.S.C. § 2422(b), according to the indictment. For so communicating with the young girl, the statute provides for a "mandatory minimum" sentence of not less than ten years and a maximum of life imprisonment. The plea agreement allows the defendant to appeal any sentence that is "unconstitutional." The defendant has appealed his 30 year sentence. All of the young girl's conduct here was apparently consensual prompted by her desire to send sexually explicit pictures to the defendant, to engage in sexual intercourse with him and to act as his sex "slave."

In this case we have a mentally ill perpetrator of the crime and an unusually willing, perhaps mentally disturbed, victim. The perpetrator, a sexual sadist, sought to "enslave" the girl; and the girl apparently sought to be his sex "slave." The psychology and the neuroscience underlying the conduct of both the man and the young girl are a puzzle. It is difficult for the judicial system to decide what kind of sentence should be imposed in this kind of case. It will probably cost the taxpayers $1 million or more to keep the defendant incarcerated for 30 years, and we cannot know now at the time of this appeal whether rehabilitation is likely. The question of release into community confinement or other forms of supervision must be left to the U.S. Bureau of Prisons or any future parole system that may be created to deal with sex offenders as they age and may lose their sadistic sexual proclivities. Like the district court and my colleagues, I do not know of any better sentence to impose at this time.